UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ANTOINE TAYLOR,

              Plaintiff,

-against-

NASSAU COUNTY, et al.,

              Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-0934 (SJF) (GRB)

FEUERSTEIN, J.

On February 25, 2011, Antoine Taylor ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("section 1983") against defendants Nassau County (the "County"), the Nassau County Police Department, and various Nassau County police officers and supervisors,[1] alleging that officers violated plaintiff's civil rights in the course of his arrest on September 26, 2009. [Docket Entry No. 1]. On June 21, 2012, the Court so ordered a stipulation between the parties voluntarily dismissing with prejudice certain defendants and causes of action from the case. [Docket Entry No. 57]. The remaining defendants in the action are the County and police officer Keith Rogich ("Officer Rogich," and together with the County, "defendants").

Plaintiff asserts (1) a claim pursuant to section 1983 against Officer Rogich for using excessive and unreasonable force in the course of plaintiff's arrest in violation of his rights under

---

[1] The defendants named in the initial complaint were the County, the Nassau County Police Department, Nassau County Police Commissioner Lawrence Mulvey, First Deputy Commissioner Robert McGuigan, Second Deputy Commissioner William Flanagan, Assistant Commissioner David Mack, Assistant Commissioner Robert Codignotto, Chief of the Department Steven Skrynecki, Chief of Patrol John Hunter, unnamed Commissioners and Supervisors, Police Officer Keith Rogich, and an unnamed Police Officer.

1

the Fourth Amendment,[2] and (2) a claim against the County pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), based upon its alleged practice of conducting arrests in an unnecessarily dangerous manner and failure to properly investigate the use of force at issue here.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docket Entry No. 63]. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

I.  Factual Background

   A.  Defendants' Rule 56.1 Statement

Prior to his arrest, plaintiff was a suspect in an investigation conducted by Detective James Cereghino into the murder of Eukapavi Hoskins, who was shot to death on August 14, 2009. County Defendants' Statement of Material Facts Pursuant to Rule 56.1 [Docket Entry No. 63-34] ("Def. 56.1 St.") at ¶¶ 9, 20. While performing a background check on plaintiff in connection with the investigation, Detective Cereghino discovered that there was an "open parole warrant" for plaintiff's arrest. Id. at ¶¶ 25, 35.

On September 22, 2009, Detective Cereghino learned that a confidential informant had informed the Hempstead Police Department that plaintiff frequented a house located at 152 West Graham Avenue, Hempstead, New York (the "house") on Fridays. Id. at ¶ 26. Detective

---

[2]Plaintiff also alleges violations of his rights under the Fourteenth Amendment. Allegations of the use of excessive force during the course of an arrest are generally analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) ("[T]he Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody . . . of the arresting officer."). Regardless, due to plaintiff's failure to offer any evidence or legal argument in response to defendants' motion for summary judgment on the Fourteenth Amendment claim, plaintiff is deemed to have waived any such claim he may have had.

2

Cereghino placed the house under surveillance on September 25, 2009 at 7:00 p.m. but called off the surveillance at 1:00 a.m. after plaintiff failed to appear at the house. Id. at ¶¶ 27-29. At 3:00 p.m. on September 26, 2009, Detective Cereghino received a call from the confidential informant notifying him that plaintiff was at the house. Id. at ¶¶ 30-31. Detective Cereghino directed the Bureau of Special Operations (the "BSO), the tactical unit of the Nassau County Police Department, to mobilize and continue surveillance on the house in anticipation of plaintiff's arrest. Id. at ¶¶ 32-33, 39-40. Officer Rogich was one of the BSO officers assigned to arrest plaintiff. Id. at ¶ 36.

The BSO was informed prior to plaintiff's arrest that plaintiff: (1) was armed with a nine-millimeter handgun; (2) was a member of the "Outlaws" gang; (3) had threatened to kill his parole officer; (4) had a "violent past," including a domestic assault incident; (5) was in violation of his parole; and (6) was a suspect in a murder investigation. Id. at ¶¶ 41-47. It is unclear whether all of the foregoing information was relayed to Officer Rogich, but Officer Rogich was at the least personally aware prior to plaintiff's arrest that plaintiff was thought to be armed with a handgun and was suspected of committing a homicide in Hempstead, New York. Id. at ¶¶ 38, 42.

To avoid harm to nearby bystanders, the BSO planned to wait for plaintiff to leave the house and then surround his vehicle with police vehicles at the intersection between West Graham Avenue and Rose Avenue. Id. at ¶¶ 55-60. Officer Rogich was riding in a vehicle driven by his partner, Officer Michael Knatz ("Officer Knatz"). Id. at ¶ 53. Officer Knatz parked the vehicle on Rose Avenue near the northwest corner of the intersection. Id. at ¶ 54. Plaintiff left the house between 6:15 p.m. and 6:30 p.m. and drove down West Graham Avenue toward the intersection with Rose Avenue. Id. at ¶¶ 68-69. Officer Knatz pulled into the

3

intersection as plaintiff was stopping at a stop sign at the intersection and drove "as though he was going to make a 3-point turn in order to drive back in the direction he came from," stopping in front of plaintiff's vehicle, without activating the emergency lights on his vehicle. Id. at ¶¶ 69-75.

According to defendants, Officers Knatz and Rogich remained in the vehicle until other police vehicles arrived to surround plaintiff, which occurred "[w]ithin moments." Id. at ¶¶ 76-77. Officer Knatz then activated the emergency lights on his vehicle, as did the other vehicles surrounding plaintiff. Id. at ¶¶ 78-80. Officer Rogich then exited the vehicle with his gun drawn and his police badge displayed around his neck, yelling for plaintiff to "stop" or "don't move." Id. at ¶¶ 82, 84-86. Officer Rogich stood approximately ten (10) feet from the front of plaintiff's vehicle. Id. at ¶ 83. As Officer Rogich exited the vehicle, plaintiff immediately drove between five (5) and twelve (12) feet in reverse, stopped the vehicle for a "split second," and then accelerated toward Officer Rogich. Id. at ¶¶ 87-90.

As plaintiff was accelerating toward Officer Rogich, Officer Rogich shot at plaintiff three (3) times. Id. at ¶ 94. According to Officer Rogich, he was "in fear for [his] life" and thought plaintiff "was going fast enough that if there wasn't some kind of intervention [then he] was going to be run over." Id. at ¶¶ 91-92. Officer Rogich moved to his left out of the way of plaintiff's vehicle as he was shooting, and was able to reach the sidewalk without being struck by plaintiff's vehicle. Id. at ¶¶ 98-101.

Plaintiff then maneuvered around Officer Knatz's vehicle and led officers on a high speed chase until colliding with a tree stump and coming to a stop. Id. at ¶¶ 102-113. The pursuit continued on foot until officers tackled plaintiff and, after further resistance, handcuffed him. Id. at ¶¶ 114-121. Officer Knatz then called for medical attention. Id. at ¶¶ 122-23.

4

B.  Plaintiff's Rule 56.1 Statement and Deposition Testimony

Defendants argue that plaintiff's Rule 56.1 statement is inconsistent with plaintiff's complaint and deposition testimony and should therefore be ignored for purposes of deciding this motion. Reply Memorandum of Law in Further Support of the County Defendants' Motion for Summary Judgment [Docket Entry No. 65] ("Def. Reply") at 1-7. In response to a motion for summary judgment, a non-movant must respond to each purportedly undisputed fact and cite to supporting admissible evidence in the record. Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c). Although plaintiff's Rule 56.1 statement purports to cite to supporting portions of plaintiff's deposition testimony, the cited testimony is at times ambiguous and contrary to the proposition in the Rule 56.1 statement. Accordingly, to the extent plaintiff's Rule 56.1 statement is not supported by admissible evidence, it has been disregarded in deciding this motion. See, e.g., Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001) ("A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains.").

While it is "in perfect accordance with Local Rule 56.1(d)" to "decline[] to consider as disputed any statement supported by admissible evidence to which [the non-movant] objects, but does not support with evidence," Feis v. United States, 394 F. App'x 797, 799 (2d Cir. 2010) (internal quotation marks omitted), the Court "may in its discretion opt to conduct an assiduous review of the record." Holtz, 258 F.3d at 73 (internal quotation marks omitted). Therefore, the Court has considered plaintiff's deposition testimony in deciding the motion.

According to plaintiff's deposition testimony, when he stopped at the stop sign on West Graham Avenue, one (1) vehicle stopped in front of him, perpendicular to his vehicle with the driver's side facing plaintiff, and one (1) vehicle stopped behind him, both touching or inches away from plaintiff's vehicle. Defendants' Motion for Summary Judgment ("Mot.") Ex. C,

5

Deposition of Antoine Taylor dated January 18, 2012 [Docket Entry No. 63-4] ("Pl. Dep.") at 80:13-86:07. Plaintiff's testimony regarding the placement of the vehicles is unambiguous. See id. at 83:17-19 ("Q: So you were inches if not touching [the vehicle in front] then is what you're saying? A: Absolutely."); 85:25-86:07 ("Q: . . . [W]hen that second SUV was behind you . . . , how far from your back bumper was it in terms of inches or feet? A: If it was not inches it was directly on it."); 85:22-24 ("I do know that I could not get out of there unless I hit one of them vehicles."). This testimony is in contradiction to plaintiff's Rule 56.1 statement, in which he "admits" that Officer Rogich was "10-12 feet in front of Plaintiff's car" when Officer Rogich exited his vehicle. Plaintiff Response to Statement of Material Facts Pursuant to Rule 56.1 [Docket Entry No. 64-1] ("Pl. 56.1 St.") at 3.

Plaintiff testified that shots were fired "seconds" after the vehicles surrounded him. Pl. Dep. at 90:10-91:20. Plaintiff allegedly did not see who was firing at him, id. at 91:21-92:15, 96:21-24, despite the fact that it was light out, id. at 70:03-07, and Officer Rogich stood directly in front of plaintiff's vehicle. Plaintiff also asserts that there was no indication that the vehicles surrounding him were police vehicles and no sirens or emergency lights were active prior to the shooting. Id. at 87:09-87:24.

Despite plaintiff's unambiguous testimony that the vehicle in front of him was mere inches from his own, plaintiff also asserts that at least two (2) of the shots were fired from directly in front of his vehicle. Pl. 56.1 St. at ¶ 16. Plaintiff recalls that one man with a gun was standing "[t]o the left of [his] vehicle" (on the driver's side), and another man with his gun drawn was "inside the SUV [in front of plaintiff's vehicle] with his head out." Id. at 92:07-93:16, 96:03-96:09. While this testimony implies that the man inside the vehicle in front of him fired the shots, plaintiff elsewhere admits that Officer Rogich was standing outside the vehicle in

6

front of plaintiff. See Pl. 56.1 St. at ¶¶ 8-9. It is unclear how Officer Rogich could have fired from directly in front of plaintiff's vehicle when his own vehicle was perpendicular to plaintiff's and only inches from plaintiff's bumper.

Two bullets entered through the front windshield of plaintiff's vehicle, and one bullet entered through the right front passenger door. Id. at ¶ 16. Plaintiff attempts to argue that the entry path of the last bullet indicates that it could not have been fired while Officer Rogich was in danger from plaintiff's vehicle. See id. at ¶¶ 16-19. However, plaintiff fails to offer admissible evidence regarding the angle or distance at which the shots were fired, and the argument is thus disregarded. Plaintiff asserts that Officer Rogich fired all three (3) shots before plaintiff moved his vehicle, id. at ¶ 15 ("Officer Rogich fired three times at Plaintiff, while Plaintiff's vehicle was stopped."), but also asserts that one (1) of the bullets was fired from the side of the vehicle, id. at ¶¶ 17-19. If both are true, then, according to plaintiff, Officer Rogich began firing from in front of the vehicle (where, according to plaintiff's own testimony, there was no room for Officer Rogich to stand) and then moved around the side of the stopped vehicle to fire another shot.

After the shots were fired, plaintiff realized he was wounded and was scared. Pl. Dep. at 97:03-06. Plaintiff testified that he then backed up his vehicle "inches" and cut the steering wheel to the right. Id. at 97:07-98:11. Although plaintiff's testimony is unclear on whether he then drove forward around the vehicle in front of him or whether he reversed again before driving forward, see id. at 97:15-103:09, he appears to claim that he backed up his vehicle a few inches, cut the steering wheel to the right, drove forward again, reversed, and then drove forward around the vehicle in front of him. Id. at 98:03-103:09. Plaintiff's testimony is also unclear on whether he hit the vehicle behind him. Plaintiff first stated that "[i]t's a possibility" that he hit

7

the vehicle, but then stated unequivocally that "[i]n order for [him] to back up [he] had to accelerate hard and move th[e] vehicle [behind him]." Id. at 97:11-18.

After leading police on a high-speed chase, plaintiff became dizzy and nauseous from loss of blood and intentionally hit a curb to stop his vehicle. Id. at 116:12-116:20, 122:11-19. Plaintiff then ran until he could no longer move and fell to the ground. Id. at 127:22-25. The men pursuing plaintiff identified themselves as police officers and kicked plaintiff in the face. Id. at 129:11-14.

Plaintiff entered a plea of guilty to manslaughter in the first degree, N.Y. PENAL LAW § 125.20, for the shooting of Eukapavi Hoskins, and reckless endangerment in the first degree, N.Y. PENAL LAW § 120.25, for his conduct on the day of his arrest. Mot. Ex. N, Plea, New York v. Taylor, Ind. No. 18N/10 (N.Y. Sup. Ct. Dec. 8, 2010) at 10:08-12:17.

II. Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).

"A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012)

(internal quotation marks omitted). "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (internal quotation marks omitted).

Although summary judgment should generally not be decided upon the basis of credibility assessments, Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010), "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). In such circumstances, "when the facts alleged are so contradictory that doubt is cast upon their plausibility" and it is determined that "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint," summary judgment against the plaintiff is appropriate. Id. at 555 (internal quotation marks and alterations omitted); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

IV. Analysis

A. Excessive Force

Defendants argue that plaintiff's shooting did not constitute a constitutional deprivation, and that even if there was a constitutional violation, Officer Rogich is entitled to qualified immunity. "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively

9

reasonable for them to believe their acts did not violate those rights." Kerman v. City of N.Y., 374 F.3d 93, 108 (2d Cir. 2004). The following analysis is applied to assertions of qualified immunity against claims of excessive force:

> The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. The inquiry is whether the alleged use of excessive force was objectively reasonable. Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover. If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . This inquiry adds a 'further dimension' to the qualified immunity analysis by acknowledging that reasonable mistakes can be made as to the legal constraints on particular police conduct. And it ensures that all but the plainly incompetent or those who knowingly violate the law are protected from suit.

Cowan v. Breen, 352 F.3d 756, 761 (2d Cir. 2003) (internal quotation marks and citations omitted). Under this analysis, the existence of a genuine issue of material fact precludes the conclusion that the defendant is entitled to qualified immunity. See Kerman, 374 F.3d at 109 ("Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder.") (citations omitted).

To establish a constitutional violation, plaintiff must show that Officer Rogich's actions were "'objectively unreasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" Nimely v. City of N.Y., 414 F.3d 381, 390 (2d Cir. 2005) (quoting Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004)) (alterations in original). "[A]n officer's decision to use deadly force is objectively reasonable

10

only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" Cowan, 352 F.3d at 762 (quoting O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003)).

According to defendants, plaintiff's acceleration of his vehicle toward Officer Rogich gave Officer Rogich probable cause to believe that plaintiff posed a significant threat of serious injury to him, making Officer Rogich's decision to shoot objectively reasonable. Defendants also assert that the reasonableness of Officer Rogich's decision to shoot is supported by the surrounding circumstances, particularly the seriousness of the crime for which plaintiff was under investigation, Officer Rogich's belief that plaintiff was armed, and plaintiff's attempt to escape arrest.

Defendants argue that there is no genuine issue of material fact with respect to the reasonableness of Officer Rogich's conduct, as no reasonable jury could find for plaintiff in light of the alleged inconsistencies and contradictions in plaintiff's deposition testimony. However, according to plaintiff, "there is a[] [disputed] issue of fact as to whether Officer Rogich had reason to fear for his life, or whether he shot Plaintiff in a stopped vehicle that was trapped between two police cars before identifying himself as a police officer." Plaintiff's Memorandum of Law in Opposition to the County Defendants' Motion for Summary Judgment [Docket Entry No. 64] ("Pl. Memo.") at 6-7.

While a jury may find that plaintiff is not credible due to apparent contradictions in his testimony, this is not one of those "extraordinary cases," Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011), in which no reasonable finder of fact could conclude in favor of plaintiff. Despite the deficiencies in plaintiff's deposition testimony, the essential issue of whether plaintiff drove his vehicle toward Officer Rogich creating a significant risk of

injury prior to the shooting is disputed: plaintiff has consistently asserted that Officer Rogich fired immediately after exiting his vehicle, before plaintiff accelerated in Officer Rogich's direction. See Pl. Dep. at 91:14-91:20. The surrounding circumstances (Officer Rogich's knowledge of the murder investigation and suspicion that plaintiff was armed) may be relevant to determining the reasonableness of Officer Rogich's decision to shoot, but the inquiry is irrelevant unless plaintiff did, in fact, place Officer Rogich in danger with his vehicle. See Cowan, 352 F.3d at 762. In light of this material factual dispute, it cannot be determined as a matter of law that no constitutional violation occurred. See Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) ("Where the circumstances are in dispute, and contrasting accounts . . . present factual issues as to the . . . reasonableness [of the use of force], a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.") (internal quotation marks omitted); see also Robinson v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("[T]he parties have provided conflicting accounts as to . . . [who] initiated the use of force, how much force was used by each, and whether [the plaintiff] was reaching toward [the officer's] gun. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and were properly not decided by the district court on summary judgment.").

A review of decisions addressing similar factual scenarios supports the conclusion that summary judgment on plaintiff's excessive force claim is not appropriate here. In Cowan v. Breen, the defendant officer stopped a vehicle in which the plaintiff was a passenger and found drugs on the driver. 352 F.3d at 758. After the drugs were found, the driver ran away on foot and the officer gave chase, leaving the plaintiff behind in the vehicle. Id. The officer lost the driver in the woods near the highway and then walked back toward his vehicle. Id. According to the officer, as he approached the vehicle, the plaintiff (now in the driver's seat) drove toward the

officer and refused to stop. Id. The officer then fired two (2) shots at the vehicle, the second of which killed the plaintiff. Id. The officer offered evidence that the vehicle was traveling between twenty (20) and thirty (30) miles per hour when the second shot was fired and that the shot was fired from close range to the vehicle. Id. at 758-59. In opposition, the plaintiff offered evidence purporting to show that: (1) the officer could not have been in danger at the time the second shot was fired because the shot was not fired from in front of the vehicle; (2) the officer did not have time to wave his hands to stop given the speed at which the vehicle was traveling; and (3) the plaintiff likely did not see the officer at all due to poor night vision and depth perception. Id. at 759.

The district court denied the defendants' motion for summary judgment, holding that there were disputed issues of genuine fact to be resolved by a jury which precluded summary judgment, including: where the officer was standing and whether he was in the zone of danger; the speed and velocity of the vehicle; and the reasonableness of the officer's alleged belief that he was in danger. Id. at 759-60. The Second Circuit affirmed the denial of summary judgment, stating that "resolution of whether a constitutional violation occurred centers on whether at the moment [the officer] decided to fire at the [vehicle], he reasonably believed that the approaching vehicle put his life or person in danger." Id. at 762. The Second Circuit further noted that "in order to accept [the officer's] argument that, as a matter of law, his actions were objectively reasonable, one would have to accept, as a matter of fact, that the [vehicle] was bearing down on him as he waved his hands, signaling [the plaintiff] to stop." Id.

Similarly, in Getlin v. Zoll, the district court considered the defendant officer's motion for summary judgment on an excessive force claim where the officer testified that he shot plaintiff after he accelerated his vehicle toward another officer instead of stopping as directed after a

13

high-speed chase. 707 F. Supp.2d 369, 372-73 (E.D.N.Y. 2010). The court noted that if it were to accept the officer's version of the facts, i.e., that the plaintiff accelerated his car with an officer near enough to create a substantial risk of injury to the officer, then summary judgment for the officer would be warranted. Id. at 379. However, as the court was required to view the facts in the light most favorable to the plaintiff, it held that it could not conclude as a matter of law that plaintiff posed a significant threat of serious injury given the plaintiff's testimony that at the time of the shooting the vehicle was stopped, the engine was off, and the plaintiff's hands were in the air. Id. at 378.

Here, as in Cowan and Getlin, the parties dispute whether Officer Rogich was in fact placed in danger by plaintiff's vehicle before firing. Viewing the evidence in the light most favorable to plaintiff, it cannot be determined as a matter of law on the record here that plaintiff posed a threat of immediate danger to Officer Rogich. Whether any contradictions or omissions in plaintiff's testimony discredit his version of events is a matter properly determined by a jury.

Accordingly, defendants' motion for summary judgment is denied with respect to plaintiff's excessive force claim.

B. Monell Liability

A municipality may be held liable under section 1983 if a governmental custom, policy, or usage of the municipality causes a deprivation of the plaintiff's rights under federal law. Monell, 436 U.S. at 690-91. "[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012); see also Lee v. City of N.Y., No. 00-CV-3181, 2002 WL 1732810, at *9 (E.D.N.Y. July 22, 2002) ("A municipality cannot be liable under § 1983 on a theory of respondeat superior for the

isolated unconstitutional acts of its employees."). Such acts may support municipal liability only where "they were done pursuant to municipal policy, or were sufficiently widespread and persistent to a support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Jones, 691 F.3d at 81.

Plaintiff argues that a "pattern of practice within the Nassau County Police department whereby arrests are conducted in an unnecessarily dangerous manner" is "demonstrated" by Sergeant Kevin McCarthy's formulation of a "plan that involved barricading Plaintiff's car with unmarked police cars." Pl. Memo. at 7-8. Plaintiff further asserts that "[d]efendants admit that the police vehicle [sic] were unmarked and did not have their lights on when they blocked Plaintiff's vehicle in because 'they did not want Plaintiff to know that they were the police before he was surrounded.'" Id.

Even if the officers did barricade plaintiff's vehicle for some period of time before activating their emergency lights or otherwise identifying themselves as police, plaintiff offers no evidence of a policy, custom, or practice to execute arrests in this manner. An officer's formulation of such a plan in a particular situation does not necessarily imply the existence of a municipal policy or widespread practice. Plaintiff thus fails to present evidence that an arrest in this manner, if it occurred, would constitute anything other than an isolated incident.

Furthermore, plaintiff fails to show how the practice of executing arrest warrants in unmarked vehicles and without emergency lights could have caused the alleged constitutional deprivation here. See Askew v. Three (3) Officers of N.Y.P.D., No. 12-CV-4773, 2012 WL 4565336, at *2 (E.D.N.Y. Oct. 1, 2012) ("[A] plaintiff must show . . . a direct causal connection

between [a] policy or custom and the deprivation of a constitutional right."). Plaintiff's excessive force claim is based upon Officer Rogich's shooting of plaintiff, allegedly without warning or cause. Such an unjustified shooting would constitute excessive force whether the officer was in plain clothes and an unmarked vehicle or a uniform and police cruiser with emergency lights activated. Plaintiff's focus on the use of unmarked vehicles implies that the officers' alleged failure to identify themselves led plaintiff to unintentionally evade arrest, inviting the use of force. This argument is irrelevant here in light of plaintiff's testimony that Officer Rogich began shooting moments after exiting his vehicle, prior to plaintiff's attempt to drive away.

Plaintiff also argues that the County may be held liable based upon its "failure to properly investigate the incident or discipline Officer Rogich." Pl. Memo. at 8. Municipal liability for a constitutional violation may lie where "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Jones, 691 F.3d at 81. "To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. This is a "'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 410 (1997)).

Defendants have offered evidence that this incident was, in fact, investigated, see [Docket Entry No. 65], and plaintiff fails to offer any evidence of a custom or practice of the County not to investigate uses of force by its officers which would indicate deliberate indifference to constitutional violations.

Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's municipal liability claim.

C.   Section 1985 Claim

"In order to state a conspiracy claim under 42 U.S.C. § 1985(3) [("section 1985(3)")], a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).

Municipal liability under section 1985(3), like section 1983, "must . . . be predicated on an official custom or policy of the municipality." Zherka v. City of N.Y., 459 F. App'x 10, 12 (2d Cir. 2012) (internal quotation marks omitted). As discussed above, plaintiff has failed to present evidence of the existence of a municipal policy or custom that caused the alleged constitutional deprivation. Furthermore, "to state a valid conspiracy claim under [section] 1985(3), plaintiff[] must, among other things, plausibly allege the existence of a conspiracy to deprive [him] of [his] constitutional rights." Kiryas Joel Alliance v. Village of Kiryas Joel, No. 12-cv-217, 2012 WL 3892744, at *5 (2d Cir. Sept. 10, 2012). "[V]ague and conclusory allegations that defendants entered into an unlawful agreement . . . do not suffice." Id.; see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation marks omitted). Plaintiff has failed to offer any evidence supporting the existence of a conspiracy between

defendants.

Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's section 1985(3) claim.

III.  Conclusion

For the foregoing reasons, defendants motion for summary judgment [Docket Entry No. 63] is granted with respect to plaintiff's municipal liability and section 1985(3) claims, and denied with respect to plaintiff's excessive force claim. The Clerk of Court shall, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: November 5, 2012
Central Islip, New York