UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ANTOINE TAYLOR,

                 Plaintiff,

  -against-

KEITH ROGICH,

                 Defendant.

----------------------------------------------------------------x

**NOTICE OF APPEAL**
CV 11-0934 (GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JAN 3 1 2014   ★

LONG ISLAND OFFICE

**C O U N S E L :**

      **PLEASE TAKE NOTICE** that the Defendant hereby appeals to the United States Court of

Appeals for the Second Circuit from the Memorandum and Order entered in this action on the 2nd day of

January, 2014.

Dated:  January 30, 2014
         Mineola, New York

                                 Yours, etc.,

                                 CARNELL T. FOSKEY
                                 Nassau County Attorney
                                 *Attorney for Defendant-Appellant*

                            By: *Robert F. Van der Waag*
                                    Robert F. Van der Waag
                                    Deputy County Attorney
                         One West Street
                         Mineola, New York  11501
                         (516) 571-3954

TO:    Clerk, E.D. N.Y.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

ANTOINE TAYLOR,

                              Plaintiff,                    **MEMORANDUM AND ORDER**
                                                           CV 11-0934 (GRB)

            -against-

KEITH ROGICH,

                              Defendant.

---------------------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

        Defendant Keith Rogich ("Rogich", a Nassau County Police Officer, moves pursuant to

Fed.R.Civ.P. 50 for judgment as a matter of law following a jury verdict against him predicated

upon the use of excessive force -- to wit, shooting the plaintiff, Antoine Taylor, during an arrest.

The motion is premised on the notion that qualified immunity precludes the jury's verdict as,

Rogich claims, plaintiff had put him in danger by driving his vehicle at Rogich, thereby placing

defendant's actions "within the hazy border between excessive force and acceptable force."

*Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).  However, because this assertion depends on a

view of the facts that was explicitly rejected by the jury, the motion is without basis.

### Background

        Following the consent of the parties to the jurisdiction of the undersigned, Docket Entry

("DE") [89], based upon the joint request of the parties, this matter was bifurcated, and a jury

trial was held solely on the issue of liability.  DE [100], [101], [102], [106], [109].  During the

five-day jury trial, the parties introduced evidence, as relevant herein, demonstrating the

1

following:

On September 26, 2009, Rogich, a member of the Bureau of Special Operations (BSO),[1]

participated in the arrest of the defendant. *See* Transcript ("Tr.") 165:23-167:5. Prior to the

arrest, Rogich had been advised that plaintiff was wanted on a parole warrant and for questioning

in connection with a homicide, and that he might be armed and had threatened his parole officer.

*See* Tr. 171:11-14; 331:1-5; 581:17-23; 603:11-20. Immediately prior to the arrest, a group of

BSO officers, driving unmarked vehicles, surrounded plaintiff's vehicle as he was leaving a

residence in Hempstead, NY. *See* Tr. 175: 21-177:11. Rogich and his partner were in a silver

Jeep Grand Cherokee SUV which pulled in front of plaintiff's vehicle when plaintiff had stopped

at a stop sign. *See* Tr. 172:13-19; 188:17-25; 198:9-19; 270:1-6.

It was undisputed at trial that Rogich fired three shots at plaintiff. Each time, he aimed

for "center mass," meaning the plaintiff's chest. Tr. 223:15-227:2. All three struck plaintiff's

vehicle; one passed through the windshield and struck plaintiff in the stomach. *See* Tr. 74:1-25;

340:21-25. The third shot fired lodged in the passenger door of plaintiff's vehicle. *See* Tr.

77:13-18

The precise circumstances under which Rogich fired the shots was the subject of

conflicting testimony. Plaintiff testified that while he was stopped at the stop sign, the defendant

fired the first shot while still inside the SUV. *See* Tr. 70:5-8; 73:12-20. Two other eyewitnesses

similarly testified that the first shot was fired from inside the police vehicle, as they observed the

muzzle flash emanate from inside the silver Jeep. *See* Tr. 640:17-641:2; 677:13-20. One of the

---

[1] BSO, comparable to a SWAT team, consists of officers highly trained in tactical matters and use of firearms. Tr. 166:20-24.

two eyewitnesses testified that she saw Rogich jump out of the Jeep after the first shot was fired, and watched him fire the next two shots, including the third from the sidewalk. *See* Tr. 677:18-679:7. It is also undisputed that one of the three shell casings ejected from Rogich's gun was found inside the police vehicle in the passenger area in which the defendant had been sitting. *See* Tr. 199:1-8; 274:16-22; 596:19-597-4.

Rogich, by contrast, testified he got out of the Jeep before firing his weapon. *See* Tr. 587:11-25. He further testified that, once he was in front of plaintiff's car, the plaintiff had backed up and "charged" toward him. Tr. 587:2-4. As such, Rogich testified, he fired because he believed it was "the only way I could stop the car from running me over." Tr. 587:15-16. Officer Alonge, another member of the BSO arrest team, testified that he observed Rogich in front of plaintiff's car, which "lurched" toward the defendant. Tr. 395:15-16. Sgt. McCarthy, who was in charge of the operation, testified that plaintiff's vehicle was moving forward at the time he heard two shots, but he could not see Rogich at the time the shots were fired. *See* Tr. 482:18-25; 486:18-25. Michael Knatz, Rogich's partner, could not see Rogich at the time the shots were fired, nor did he know Rogich's location at that time. *See* Tr. 317:12-14; 317:23-318:2; 320:3-6. Knatz also testified that he heard the subject gunshots after hearing plaintiff's engine "roar" and the car move forward. *See* Tr. 335:5-6. Knatz did not fire his weapon or aim it at plaintiff's vehicle. *See* Tr. 320:3-23. Indeed, though the unsuccessful apprehension of plaintiff involved at least a half dozen BSO officers[2] in a coordinated operation, no one other than the defendant discharged a weapon at the plaintiff. *See* Tr. 319:24-320:2.

---

[2] Plaintiff's counsel stated during summation that the operation involved 16 officers, though it is unclear whether there was evidence supporting this specific figure. *See* Tr. 739:12-14.

Several witnesses testified that Rogich was not in front of plaintiff's vehicle when he fired the third shot. *See* Tr. 406:15-409:24; 663:12-16; 679:3-5. This observation was supported by physical evidence in that the bullet was lodged in the passenger side door of plaintiff's vehicle. *See* Tr. 81:5-6. Two witnesses testified that Rogich fired the third shot from the sidewalk. *See* Tr. 663:12-16; 679:3-5.

After being shot, plaintiff drove away from the arrest scene, as the officers had not effectively blocked his escape route. *See* Tr. 337:1-340:8. Plaintiff reported fleeing because, having been shot without provocation, he feared for his life. *See* Tr. 79:25-80:-3; 112:11-113:2. Plaintiff's vehicle neither struck the defendant nor any of the police vehicles at the arrest scene. *See* Tr. 257:2-260:9. The plaintiff drove for about one mile, and then crashed his vehicle, at which point he was apprehended. *See* Tr. 337:4-340:20.

### Discussion

Last year, in *Weather v. City of Mount Vernon*, 474 F. App'x. 821 (2d Cir. 2012), the Second Circuit addressed the criteria applicable to a Rule 50 motion challenging an excessive force verdict on the basis of qualified immunity. The Court of Appeals observed:

> When a defendant invokes qualified immunity, we make the following analysis, deriving from *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001): First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second ... the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. . . . Because the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness, the two *Saucier* inquiries may ultimately converge on one question in excessive force cases: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful.

*Id.* at 822 (citations and quotations omitted). Noting that the jury's verdict would "largely foreclose" an argument that defendant's conduct did not constitute a constitutional violation, the Court described the "high standard" that a defendant must meet to prevail in the face of a jury finding of excessive force:

> Where, as here, a jury has deliberated in a case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule 50 only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 822-23.

On this motion, defendant's argument is limited to the second *Saucier* prong, *i.e.* whether or not Rogich's use of force violated a "clearly established" right. *See* Defendant's Memorandum of Law ("Def's Memo.") at 12-13, [DE 119-1] ("Officer Rogich's use of force fell within the hazy border between excessive force and acceptable force which entitles police officers qualified immunity from Fourth Amendment excessive force claims"). Defendant's motion is predicated almost exclusively upon the Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), which examined -- in the context of a summary judgment motion - - the question of whether it violated a "clearly established" right for an officer "to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* at 200. The Court determined that "Brosseau's actions fell in the hazy border between excessive and acceptable force [and that qualified immunity applied because] cases by no means clearly establish[ed] that Brosseau's conduct violated the Fourth Amendment." *Id.* at 201.

5

Defendant's position, however, is premised upon the assertion that "Rogich, unlike the

police officer in *Brosseau*, was in imminent danger of being struck by the Plaintiff's car." Def's

Memo. at 13. This contention was the central fact at issue in this case and subject of the five-day

jury trial. As Judge Feuerstein ruled in denying defendant's motion for summary judgment on

the ground of qualified immunity, "the essential issue of whether plaintiff drove his vehicle

toward Officer Rogich creating a significant risk of injury prior to the shooting is disputed."

Memorandum and Order at 12, DE [72]. This is precisely the type of case in which, as the

Supreme Court later observed upon further consideration of *Saucier*, "the answer to whether

there was a violation may depend on a kaleidoscope of facts" that need to be developed at trial.

*Pearson v. Callahan*, 555 U.S. 223, 239 (2009).

Whether Rogich's use of deadly force was objectively reasonable because he faced a risk

of injury by plaintiff has been resolved by the jury's verdict in favor of plaintiff. The Court

instructed the jurors that:

> The plaintiff Antoine Taylor contends that his constitutional rights were violated
> on September 26, 2009, when excessive force was used by defendant Keith
> Rogich during the course of arresting plaintiff by shooting him. On the other
> hand, the defendant Keith Rogich contends that the plaintiff drove his car toward
> Rogich who reasonably feared for his safety. He denies that he used excessive
> force in any manner and that he only used the force necessary to protect his safety
> . . .
>
> In evaluating the reasonableness of the force which was used, you must remember
> that law enforcement officers are not prohibited from using physical force in the
> course of making an arrest if reasonably required. The penal law of the State of
> New York specifically provides as follows . . .
>
> "A police officer, in the course of effecting or attempting to effect an arrest, may
> use physical force, when and to the extent he or she reasonably believes such to
> be necessary in self-defense, except a deadly physical force may be used for such
> purposes, only when he or she reasonably believes that the use of deadly physical

6

force is necessary to defend the police officer or another person from what the officer reasonably believes to be the . . . imminent use of deadly physical force."

Here, where the parties' factual contentions are disputed, you must consider the question of what events actually occurred. You must determine whether plaintiff proved that on September 26, 2009, he was shot unjustifiably or whether plaintiff's conduct during the course of his arrest put defendant in physical danger as the defendant contends.

The question before you is whether the actions of the defendant Keith Rogich on September 26, 2009, were objectively reasonable, meaning what a reasonably prudent police officer would have done under similar circumstances, in light of the facts and the situation confronting him on that occasion, without regard to his underlying intent or motivation.

Tr. 793:11-795:22.

Having heard these instructions, and after hours of deliberation, the jury returned a verdict explicitly finding that "Rogich used excessive force in discharging the firearm during the arrest of plaintiff." Tr. 812:24-813:1. That jury determination may not be disturbed by this Court unless there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Weather*, 474 F. App'x. at 822-23.

Considering the evidence in a light most favorable to the plaintiff, the defendant cannot meet this high standard. The jury found, and was entitled to find based on the evidence, that plaintiff did not present a danger to defendant that justified the use of lethal force. As the Circuit held in Weather, "[t]he evidence fully supports the jury's finding that [plaintiff] was not posing an immediate threat." *Weather*, 474 F. App'x. at 824.

And this finding by the jury disposes of defendant's argument that his conduct did not

7

violate "clearly established statutory or constitutional rights of which a reasonable person would have known [as that] inquiry tends to converge with the first in excessive force cases, with the question ultimately being whether, in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Weather*, 474 F. App'x. at 824. As in the *Weather* case, "all of the circumstances which [defendant] point[s] out as evidence that supported [defendant]'s use of force were either expressly or implicitly rejected by the jury, whose findings were amply supported by the trial evidence." *Id.*

On this motion, though defendant argues that the Court need not (as it cannot) reassess credibility of the witnesses, nearly every argument made by defendant urges the undersigned to do just that. Defendant argues that "Rogich is entitled to, at the very least, qualified immunity *when his version of events is credited*." Def's Memo. at 3 (emphasis added). Counsel contends that plaintiff offered "no coherent version of events which a jury could have credited one way or the other," and characterizes plaintiff's testimony as "inconsistent and unbelievable," "a mix of fantasy and impossibility," and "difficult to believe." *Id.* at 3-9. And while counsel argues that portions of plaintiff's testimony was "factually impossible," these contentions are merely thinly-veiled credibility attacks. *See, e.g., id.* at 5 (plaintiff's "alleged timing of the shooting is impossible to reconcile with Plaintiff's claims about where Officer Rogich was during each shot"). On a Rule 50 motion, the Court is without authority to engage in credibility determinations and these arguments are, therefore, unavailing.

The trial record contains direct and inferential evidence that defendant fired his weapon at the plaintiff from the relative safety of the police SUV and from the sidewalk, and at a time when the plaintiff's car remained immobile. There was, of course, some evidence (primarily in

8

the form of the defendant's testimony), that the shots were fired in response to a danger

presented by the plaintiff. Defendant's counsel challenged the jury during his summation:

> I ask you, was it unreasonable for Officer Rogich to fear for his life when plaintiff
> nearly ran him over? Was it unreasonable for Officer Rogich to shoot at plaintiff
> in an attempt to save his own life?
>
> It was not unreasonable. Please don't believe plaintiff's completely unrealistic and
> unbelievable claims. You must enter a verdict in favor of the defendant.

Tr. 772:13-21. Clearly, the jury did not share this view, a determination well within its

prerogative.

Furthermore, as in the *Weather* case, "no evidence was presented at trial to suggest that

[defendant] made a mistake regarding his legal obligations such that would excuse his actions."

*Weather*, 474 F. App'x. at 824. To the contrary, defendant conceded during his testimony that

an officer "can use physical deadly force [only] when you feel your life is threatened or the life

of a third party," and failure to follow this rule could result in criminal prosecution and job

termination. Tr. 161:21-163:10. It is clear, in this case, that the jury did not find that Rogich's

life was in jeopardy at the time of the shooting, a determination supported by competent

evidence, including the fact that none of the other officers discharged their weapons during the

attempted arrest. As a result, "[a]ny belief that his conduct was lawful would not be reasonable,

given the facts found by the jury." *Weather*, 474 F. App'x. at 823-4.

9

## CONCLUSION

For all of the reasons set forth above, I find that there is sufficient evidence of record to

support the jury's finding, which undermines defendant's claim of qualified immunity. As such,

the motion for a judgment as a matter of law is DENIED.


Dated: Central Islip, New York
     January 2, 2014

               /s/ Gary R. Brown
               United States Magistrate Judge

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

ANTOINE TAYLOR,

              Plaintiff-Appellee,                        CV 11-0934 (GRB)

     -against-

KEITH ROGICH,

              Defendant-Appellant.
-------------------------------------------------------------------------------x

---

## NOTICE OF APPEAL

---

**CARNELL T. FOSKEY**
**Nassau County Attorney**
**Attorney for Defendant-Appellant**

By: Robert F. Van der Waag
Deputy County Attorney
One West Street
Mineola, New York 11501
(516) 571-3954